## DE LA HUNT a. HIGGINS.

*New York Common Pleas; General Term, December*, 1859.

NOTICE OF PROTEST.—ERRONEOUS DATE.

It is not sufficient to charge the indorser of negotiable paper, that it was duly
presented at maturity, payment demanded and refused, and that it was there-
upon protested, and notice given him, if the notice, by reason of an error in the
date, appears to refer to a presentment and protest made before maturity.

A note due on the first day of July, was then duly protested for non-payment, but
the notice of protest served on the following day was misdated as of the thirtieth
day of June.

. *Held*, without reference to the question whether he had been misled, that the
indorser was not liable.

Appeal from a judgment.

The action was on a promissory note, against an indorser.
The note matured on the 1st of July, 1859, and was on that day
duly presented for payment. On the day following, a notice of
protest was served upon the defendant, M. J. Higgins, but it was

dated the 30th June, 1859, and was in these words : " Please to take notice that a promissory note made by Simon Higgins, for $150.00, dated February 28, 1859, at four months, and indorsed by you, is protested for non-payment, payment having been demanded and refused,. and that the holders look to you for the payment thereof with expenses and damages."

DALY, F. J.—Wynne *a.* Alden (4 *Den.*, 163), is a controlling authority as to the insufficiency of the notice. It appeared in that case, that the note was duly demanded, and payment refused, upon the day it fell due, and that the notice was mailed on that day to the defendant, but as the notice was without date, and stated that the note was " this day presented for payment and payment was refused," it was held to be insufficient. This was going very far, and farther I think than the policy of the commercial law required, but as the case has not been reversed by the Court of Appeals, it should be conformed to and followed. I do not agree that it must be regarded as overruled by the decision of the Court of Appeals in the Cayuga County Bank *a.* Warden (1 *Comst.*, 413), as the question there was solely whether the indorser was or could be misled by the erroneous description of the note.

The case is, if any thing, stronger than Wynne *a.* Alden, as here the notice was dated as if the day before the note fell due, and came near to Ransom *a.* Mack (2 *Hill*, 587), where it was dated the day after, and it was said by BRONSON, J., in that case, that the indorser had a right to presume that the note was demanded the day after it fell due, as in this case he might presume that it was demanded the day before it fell due. The conclusion in Ransom *a.* Mack was, that the indorser had a right to consider himself discharged, as the notice showed that the holder relied upon a demand that was utterly void, and the same conclusion applies with equal force to this case, for here the notice, bearing date the day before the note was due, was that the note had been " protested for non-payment, payment *having been* demanded and refused."

The judgment must be reversed.

BRADY, J. (after stating the facts).—The defendant, M. J. Higgins, the indorser, insists that the notice was not sufficient to

charge him, and that the judgment against him should be reversed. He relies upon Wynne *a*. Alden (4 *Den.*, 163), and Ransom *a*. Mack (2 *Hill*, 587).

In the former case the notice was without date, but stated that the note had "this day been presented to the maker for payment, and payment refused." The question presented was on the face of the notice, no evidence of extraneous facts having been given, in aid of the intrinsic defect in the notice, and the notice was held to be insufficient. In the latter case the notice was dated one day after the day on which the presentment should have been made, and stated that on "that day" the note was presented. The notice was held to be insufficient.

The indorser is entitled to notice of the due presentment of the note, either in express terms or by necessary or reasonable implication from what the notice contains; and it must appear in one form or the other, or the notice will be defective. (*Edwards on Bills*, 470; Wynne *a*. Alden, 4 *Den.*, 163; Ransom *a*. Mack, 2 *Hill*, 587; Remer *a*. Downer, 23 *Wend.*, 626; Cayuga County Bank *a*. Warden & Griswold, 1 *Comst.*, 413.)

In this case there was no intrinsic defect in the notice. It contained all the requisites to charge the indorser, and is unlike the case of Wynne *a*. Alden (4 *Den.*, 163). If the notice had no date, the evidence in the case of extraneous facts, namely, of the presentation and dishonor on the 1st July, would be sufficient in aid of the notice, but the date of the notice being the 30th June, one day before the note became due, and the notice asserting that payment had been demanded, was notice to the indorser that on or before the 30th June such presentation had been made. If the notice had stated "payment on this day having been demanded" it would present the same question considered in Ransom *a*. Mack (2 *Hill*, 587), because it would then appear that the demand was made on the day of the date of the notice.

I think the authorities referred to are conclusive of the question herein arising upon the contents of the notice. There is nothing in it which either in express terms, or by necessary or reasonable implication, notifies the indorser that the note was presented and dishonored when it became due, and that the judgment should therefore be reversed as to M. J. Higgins.

HILTON, J. (dissenting).—It is not, nor indeed, upon the evidence, can it well be disputed, that the note in question on the day it matured was demanded of the maker, and payment refused ; and that notice of this demand and non-payment was on the day following duly given to the indorser, M. J. Higgins. But it appears that the notice was wrongly dated by a mistake of the notary, and it is contended that the effect of this mistake is to invalidate the notice, and thus discharge the indorser from liability.

It is not intimated, nor is there any evidence in the case, from which it can be presumed that the defendant was in any way misled by this error, or that the notice failed to apprise him that this particular note had been dishonored, and under such circumstances, I think, the justice very properly considered the evidence at the trial as aiding the defect in the notice, and in determining as to its sufficiency.

The cases of Wynne *a.* Alden (4 *Den.*, 163), and Ransom *a.* Mack (2 *Hill*, 587), cited and relied on by the appellant, seem to me to have been overruled by the Court of Appeals in Cayuga County Bank *a.* Warden (1 *Comst.*, 413), as far as they may be deemed controlling upon the question here presented. In the latter case the objection rested upon a misdescription of the note, and, therefore, it was claimed that the notice of protest was not calculated to inform the defendant of the note in that suit having been dishonored.

It then appeared in evidence that although the note was misdescribed in amount, and also in other respects, yet the defendant could not have been misled thereby, as the bank held no other note indorsed by him. Chief-justice Jewett, in delivering the opinion of the court said : " Concede that such variance or misdescription exists, it is well settled in accordance with good sense, that an immaterial variance in the notice will not vitiate it. And certainly a variance is immaterial which is not calculated to, and does not in reality, mislead a party. Here the note was properly described, was duly demanded when it became due, and the day following such demand the defendant was notified thereof, and merely because the notice bore a wrong date, and stated that the note had been on *that day* demanded, it cannot and ought not in the absence of any proof on the sub-

ject be inferred that this error in date misled the defendant to his injury."

It seems to me, in the words of Chief-justice Jewett, "that to hold in conformity with the objection here stated, would be to sacrifice substance to the merest technical formality, and that it is quite impossible not to see, under the circumstances disclosed in this case, that the notice here given fully informed the defendant that this particular note had been dishonored."

The remaining objections on this appeal appear to me fully disposed of by the evidence at the trial, showing this note to have been given for property purchased with money belonging to the separate estate of the plaintiff, and that she became the holder of it for a valuable consideration before maturity.

I am of opinion that the judgment was right and should be affirmed.

## SHARP a. THE MAYOR, &c., OF NEW YORK.

*Supreme Court, First District; Special Term, December,* 1859.

NEW YORK CITY.—COMPTROLLER'S APPLICATION TO VACATE JUDGMENT.—REFERENCE.

Under the provisions of the act of 1859, authorizing applications by the comptroller of the city of New York to vacate judgments against the city (*Laws of* 1859, 1127, ch. 489, § 5), it is sufficient to sustain an application, that the comptroller swears to his belief that the action was unfounded and fraudulent, whether afterwards substantiated by proof or not.

If on the hearing, fraud or collusion is not shown, but gross error and mistake, the court will open the judgment.

In an action against the city to recover damages for false representations made by its agents on the sale of a lease, the plaintiff obtained an order of reference on an affidavit merely stating that the trial would occupy a long time, and that a number of separate and distinct facts would have to be proved on the part of the plaintiff, by a large number of different witnesses; and the order of reference recited that the motion was opposed by the defendants.

*Held,* 1. That the order referring the action was improperly granted.

2. That under the act of 1859, the court had power at special term to vacate the judgment and revoke the order of reference.